THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RUBEN VINCENT, Defendant-Appellant.

First District (2nd Division)   No. 84—2958

Opinion filed January 26, 1988.

Steven Clark and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan S. Cherry, Sharon Johnson Coleman, James P. McKay, Jr., and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a jury trial in June 1984, defendant was found guilty of voluntary manslaughter and sentenced to four years' imprisonment. Defendant appealed, and in July 1986, this court ordered a new trial based upon the trial court's submission of an instruction to the jury which impermissibly shifted the burden of proving self-defense to the defendant. In August 1986, the State filed a petition for rehearing and a motion to supplement the record, alleging that the jury instruction upon which the reversal and remand were based was mistranscribed. This court then withdrew its slip opinion and ordered a hearing pursuant to Supreme Court Rule 329 (107 Ill. 2d R. 329), which mandates that the trial court must resolve any disputes regarding the accuracy of the record on appeal. After hearing evidence and argument, the trial court found that the jury instruction in question as contained in the report of proceedings was incorrect. Defendant appeals from that finding, raising the following issues: (1) whether the evidence presented at the Rule 329 hearing established that the jury instruction which was transcribed in the report of proceedings was erroneous; (2) whether the jury was properly instructed as to the burden of proof on the issue of justifiable use of force.

In February 1981, defendant and a friend, Byron Bolden, were walking toward the Bryn Mawr "el" station in Chicago when a stranger, Emmett Harris, bumped into defendant. Defendant testified that after words were exchanged Harris threw a bottle, which hit defendant in the chest. Harris swore at defendant, and then, according to defendant, walked up and hit defendant in the face, causing defendant to fall to the ground and blur his vision. As he tried to get up, he saw Bolden struggling with Harris. Defendant took out his knife, and "stuck it out" as Harris tried to hit him. Defendant testified that he

did not intend to harm Harris, but wanted only to stop him. Defendant did not know whom he had hit, or if he had hit anyone at all. Bolden and Harris continued to fight, and as defendant was getting up he "stuck" his knife out again and stabbed Bolden in the leg.

Defendant testified that he was not angry at Harris, but simply scared. The fight lasted only a few seconds. Harris was taller and heavier than defendant. The doctor who performed the autopsy testified that Harris died as a result of a stab wound to his chest.

Defendant was charged with both murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), and voluntary manslaughter based on an unreasonable belief in self-defense (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b)). The jury acquitted defendant of murder, but convicted him of voluntary manslaughter.

Defendant appealed, and this court reversed his conviction and remanded his case for a new trial, because the record indicated that the following instruction had been given to the jury:

"The jury is justified in finding the defendant not guilty if they find the *defendant establishes* the following propositions:

1. That defendant, Ruben Vincent, acted to defend himself against the use of unlawful force to his person; and

2. That the defendant, Ruben Vincent, reasonably believed that the force he used was necessary to prevent imminent death, or great bodily harm to himself, or the commission of a forcible felony." (Emphasis added.)

Thereafter, pursuant to the State's petition for rehearing, this court withdrew its opinion and remanded the case to the trial court for a hearing pursuant to Supreme Court Rule 329. At that hearing, conducted in October 1986 before Judge Pomaro, four witnesses testified: Thomas Carroll, Judge Pomaro's clerk at the time of the trial; Assistant State's Attorneys Lee Messinger and Kevin Kelly; and Tobias Dixon, defendant's attorney at trial.

Because Judge Pomaro is blind, Carroll acted as the judge's eyes and sat in on the instruction conference. Carroll also read the court's instructions to the jury. He testified that he did not recall making any mistakes as he read, and there were no objections or sidebars during the reading of the instructions. After reading the instructions, Carroll gave them to the sheriff, who brought them into the jury room with the rest of the evidence. After reviewing a certified copy of the instructions and the record of proceedings, Carroll testified that he remembered reading the following instruction at trial:

"The jury is justified in finding the defendant not guilty if they find the *evidence establishes* the following propositions:

1. That defendant, Ruben Vincent, acted to defend himself against the use of unlawful force to his person; and

2. That the defendant, Ruben Vincent, reasonably believed that the force he used was necessary to prevent imminent death, or great bodily harm to himself, or the commission of a forcible felony." (Emphasis added.)

Carroll admitted that he had no independent knowledge of the instruction on self-defense. He also stated that he believed he had read "evidence establishes" because if he had read "defendant establishes" someone would have objected.

After the jury reached a verdict, the instructions were given back to Carroll. He did not verify that all the instructions were returned to him, but file-stamped the first page and put them in the court file. Following sentencing, defendant's file was sent to the Criminal Courts Building at 26th and California, where it was stored. After the case was reversed on appeal, Assistant State's Attorney Kelly asked Carroll to reorder the court file from 26th Street. Kelly reviewed the file and Carroll then sent it back to 26th Street to John Lombardo. (The record is unclear as to what position John Lombardo has with the courts.) Carroll believed that Lombardo wanted the file in order to certify the instructions contained therein. When the file came back from Lombardo, the instructions were missing from the court file.

Lee Messinger, the assistant State's Attorney who, along with Kevin Kelly, tried defendant's case, testified next. She did not participate in the instruction conference, but testified that she was present when Carroll read the instructions to the jury. Messinger stated that she read a copy of the instructions as Carroll read aloud and that she did not recall hearing Carroll read the word "defendant" in place of "evidence" in the self-defense instruction. If she had heard this she believes she would have objected.

Assistant State's Attorney Kelly then took the stand. He testified that he participated in the instruction conference and was present when the instructions were read, although he did not specifically recall hearing the instructions read to the jury. Kelly recalled that several instructions had to be prepared after the conclusion of the instruction conference, and testified that it was possible that the State's Attorneys office typed some of defense counsel's instructions, due to time constraints.

After defendant's case was reversed on appeal, Kelly ordered the court file because he was curious as to what instructions were contained therein. The instruction he saw in the court file read that the "evidence" must establish the justifiable use of force. After Kelly's

testimony the State rested.

Attorney Tobias Dixon testified on behalf of defendant that he had tendered an instruction during the instruction conference which read "evidence" must establish the justifiable use of force, but he could not recall if this was one of the instructions typed by the State. Dixon also could not recall whether the clerk said "evidence" or "defendant" when he read the instructions to the jury. He believes that if he had heard the clerk read "defendant" he would have alerted the court.

The parties then stipulated to the affidavit of Deborah Bailey, the court reporter responsible for transcribing the proceedings at defendant's trial. The affidavit stated:

"DEBORAH BAILEY, being first duly sworn on oath states as follows:

1. Affiant is an official court reporter of Cook County.

2. In my capacity as an official court reporter, I was assigned the responsibility of transcribing the proceedings occurring on June 13, 1984 in *People v. Vincent*, Indictment No. 84–C–2678 before the Honorable Nicolas T. Pomaro.

3. At the request of Assistant State's Attorney Thomas Jaymor [correct name is Thomas Gainer], I examined my notes on the instructions read to the jury in the above proceedings on the above date.

4. My stenographic notes of the sixteenth jury instruction read to the jury reads as follows:

The jury is justified in finding the defendant not guilty if they find the *defendant establishes* the following propositions:

1. That the defendant, Ruben Vincent, acted to defend himself against the use of unlawful force to his person;

2. That the defendant, Ruben Vincent, reasonably believed that the force he used was necessary to prevent imminent death, or great bodily harm to himself, or the commission of a forcible felony.

5. The typed transcript of the trial record contains an exact transcription of the instruction which was read to the jury in *People v. Ruben Vincent*."

Following the introduction of this affidavit the defense rested, and the attorneys presented their arguments to the court.

Assistant State's Attorney Kelly argued that the jury instruction he found in the court file which read "evidence" must establish justifiable use of force "was beyond any doubt" the instruction that was given to the jury. Kelly also informed the court that Deborah Bailey

had admitted making a mistake in the transcript of proceedings in a previous case, *People v. Allen* (1985), 109 Ill. 2d 177, 486 N.E.2d 873.

Defendant argued that the witnesses were merely testifying from memory, a practice prohibited by the Illinois Supreme Court in *People v. Allen*, and that simply because an instruction which read "evidence establishes" was found in the court file does not establish that the jury was given that instruction rather than another one.

Following arguments, Judge Pomaro began his findings by stating for the record that he was blind and had been blind since the age of six. The judge also stated that he remembered the case and the attorneys. Although Judge Pomaro did not remember every word of the instructions, he believed the instructions were read properly. He also believes that he would have made a correction if the clerk had read something incorrectly. In addition, the judge said he believed it was important that the court reporter had made a mistake on another occasion.

After stating that there was really no evidence that an improper instruction had gone back to the jury other than the transcript, and that the recollection of the State's Attorneys, the clerk, and himself were all to the contrary, Judge Pomaro ruled that the proper written instruction was given to the jury, the proper oral instruction was read, and the report of the proceedings by the court reporter was in error. Defendant appeals from this ruling.

OPINION

■■■ Supreme Court Rule 329 provides in part as follows:

> "The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. *** Any controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made to conform to the truth." (107 Ill. 2d R. 329.)

Thus, a reviewing court is bound by a certified record of the proceedings in the trial court, and that record is presumed to be correct unless it can be shown to be otherwise. The Illinois Supreme Court discussed what evidence is necessary to correct a record in *People v. Allen* (1985), 109 Ill. 2d 177, 486 N.E.2d 873.

In that case, plaintiff was convicted by a jury of conspiracy to commit armed robbery and attempted robbery. The appellate court reversed the attempted armed robbery conviction and remanded for a new trial on that issue, finding that the trial court misstated the law when reading the attempted armed robbery jury instruction. The com-

mon law record contained the following written instruction, which correctly states the law:

"To sustain the charge of attempt, the State must prove the following propositions:

* * *

Third: That the defendant did not act under compulsion."

The transcript of proceedings indicated that the trial judge, in reading the instruction to the jury, stated:

"To sustain the charge of attempt, the State must prove the following propositions:

* * *

Third: That the defendant, or one for whose conduct she is legally responsible, did not act under compulsion."

After the appellate court reversed the attempted armed robbery conviction, the State filed a motion in the appellate court for leave to supplement the record and also filed a petition for rehearing, claiming that the transcript of proceedings was inaccurate. The appellate court denied the State's motions, and the supreme court granted leave to appeal. The supreme court remanded the cause to the trial court for the limited purpose of conducting a hearing pursuant to Rule 329, to determine whether the transcript of proceedings regarding the jury instructions was an accurate version of the trial court proceedings.

The only witness to testify at that hearing was Debra Bailey, the court reporter who took the relevant portions of defendant's trial. (Ms. Bailey also took the relevant portions of the trial in the instant case.) She testified that her stenographic notes of the judge's reading of the third proposition of the attempted armed robbery instruction did not contain the words "or one for whose conduct she is legally responsible," and that those words should not have been included in the official transcript. Bailey further testified that she had relied on a set of jury instructions given to her by the State's Attorney's office when preparing the official transcript. She did notice a discrepancy between her notes and the set of instructions given to her by the State's Attorney's office, but assumed that she had missed something the trial judge had said and thus added the additional language contained in the set of instructions provided by the State's Attorney's office. The trial judge then ruled that the evidence supported the proposed correction.

The supreme court upheld this finding, noting that the correction was supported by the original written jury instructions given to the jury to take to the jury room while they deliberated and the court reporter's stenographic notes, and stating:

"It is well established that a party may not prove an inaccuracy in the record merely by presenting oral testimony. [Citations.] Rather, the inaccuracy must 'be proved by the production of some note or memorandum from the records or quasi-records of the court, or by the judge's minutes, or by the papers on file in the cause.' [Citations.] *** [W]hen there is a conflict between the common law record and the report of proceedings the court should resolve the conflict by looking at the record as a whole. [Citations.] In looking at the record as a whole, the circuit court judge noted that the defense did not object to the reading of the attempted-armed robbery instruction and did not raise the error in its post-trial motion. Although the failure to object or to include the error in the post-trial motion does not conclusively prove that the error did not occur, it does lend support to the State's contention that it did not occur." *Allen*, 109 Ill. 2d at 184.

■ Here, the only proof offered that the certified transcript of the reading of the instructions was inaccurate was the testimony of the participants in the original trial. The supreme court has held that such testimony alone is insufficient to prove an inaccuracy in the record. (*Allen*, 109 Ill. 2d at 184.) The State argues that the instruction found in the court file which reads *"evidence"* rather than *"defendant"* establishes that the transcript was inaccurate. This argument is flawed, for the mere fact that such an instruction was found in the court file, which contained instructions both given and refused, does not prove that the jury was so instructed. We must assume the certified transcript is correct until the contrary is proven. The State failed to show affirmatively that the record is in error. *People v. Wilson* (1976), 43 Ill. App. 3d 583, 357 N.E.2d 81.

Defense counsel failed to object to the instruction as given and did not challenge it in a post-trial motion. In such circumstances, instructional errors are ordinarily deemed waived. However, when the case is factually close and fundamental fairness requires that the jury be properly instructed, a reviewing court may reverse a conviction on an instructional defect which would not otherwise be preserved for review. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.) Failure to instruct the jury properly that the State bears the burden of proving absence of justification under the adequate provocation branch of voluntary manslaughter may be reversible error and preserved for review despite the absence of a timely objection and tender of a proper objection. *People v. Clevenger* (1985), 130 Ill. App. 3d 1087, 475 N.E.2d 290; see also *People v. Thurman* (1984), 104 Ill. 2d

326, 472 N.E.2d 414; *People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742.

Here, the jury was not clearly instructed as to who bears the burden of proving justifiable use of force, or the absence thereof. Whether defendant reasonably believed that the use of force was justified is a close question. It is undisputed that Harris, the decedent, was the aggressor. No eyewitnesses gave testimony contradicting defendant's version of events. The homicide took place in the context of a struggle, and the fatal blow occurred only a few moments after the fight had begun. The fact that defendant accidentally stabbed Bolden in the leg adds force to his argument that there was chaos. The evidence on the issue of justifiable use of force in this case is close enough that the marginal difference represented by burdens of proof could have clearly affected the jury's decision.

The error in this case is more significant than in cases in which an instruction important to the defense is omitted. (See *People v. Thurman* (1984), 104 Ill. 2d 326, 472 N.E.2d 414; *People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742.) Not only was the proper instruction not given, but the jury was misinformed as to the burden of proof. This error was not corrected in earlier stages of the trial, as neither party mentioned the State's burden of proving absence of justification during their arguments. Therefore, the trial court's finding that the jury was instructed that the "evidence" must establish justifiable use of force is vacated and this case is remanded for a new trial.

■ Defendant also argues that it is improper to instruct a jury that the evidence must establish that defendant had a reasonable belief that self-defense was necessary. Because this issue may arise in defendant's new trial, we will address it here.

In homicide cases, the State bears the burden of proving beyond a reasonable doubt that the defendant's use of force was not justified. (*People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742.) The burden of proving justification never shifts to the defendant. (*People v. Arcabascio* (1946), 395 Ill. 487, 495-97, 70 N.E.2d 698; *People v. Walden* (1976), 43 Ill. App. 3d 744, 748-49, 357 N.E.2d 232, 236; *People v. Lenzi* (1976), 41 Ill. App. 3d 825, 826, 355 N.E.2d 153; *People v. Pitchford* (1976), 39 Ill. App. 3d 182, 186, 350 N.E.2d 170.) As defendant argues, it is improper to use the instruction that the "evidence establishes" justifiable use of force, because there need be no showing of justifiable use of force; rather, the State must show an unjustifiable use of force. The instruction is unclear and ambiguous, as it could lead a jury to believe that defendant must prove that his use of force was justified. In defendant's new trial an instruction which

clearly describes the State's burden should substitute for the instruction which states the "evidence" must establish a reasonable belief that force was necessary.

For the foregoing reasons the trial court's findings in the Rule 329 hearing are vacated, defendant's conviction is reversed and this case is remanded to the circuit court for a new trial.

Vacated in part; reversed and remanded.

STAMOS and BILANDIC, JJ., concur.